# EXHIBIT A

**EXHIBITS IN SUPPORT OF DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**

* Auth (Verified) *

RECEIVED JAN 3 0 2017

# Functional Evaluation for MCRP Eligibility

**Inmate:** Moore, Samy
**CDCR#:**
**DOB:**

**Date of Report:** 01.26.17

Mr. Moore          was interviewed in a confidential setting in Pelican Bay State Prison on 01.25.17. This evaluator reviewed with Mr. Moore the purpose of this evaluation interview and the limits of confidentiality associated with this report. In my opinion, Mr. Moore understood the purpose and limits of confidentiality associated with this evaluation.

**1. Ability to independently navigate public transportation.**
Mr. Moore reported that he has experience successfully navigating the AC Transit and BART systems in the SF Bay area. He knows how to read the transit maps to determine schedules, stops, and fees. Mr. Moore reported he has no HX of arrest/detention/citation related to unacceptable BX on transit systems. In the opinion of this evaluator, Mr. Moore can be reasonably expected to successfully utilize public transportation independently and to comply with behavioral expectations of using public transportation.

**2. Ability to develop a routine and attend to a schedule independently, including charging a GPS twice a day.**
Based upon a review of Mr. Moore's educational and vocational records within CDCR, it is the opinion of this evaluator that Mr. Moore has the ability to develop a routine and attend to a schedule independently, including charging a GPS twice a day. He has completed a GED within CDCR, has several positive reviews on his fulfilling the role of Vice Chair in AA/NA groups (2008-2009), and several RVRs for possession of a cellular phone and/or cellular phone chargers suggests he knows how to charge electronic devices. A review of RVR patterns indicates a lack of violent RVRs over the last two years (last: 11.06.14, Fighting), and over random UA testing conducted four times a month on Mr. Moore have been negative since 08.01.15. Mr. Moore has demonstrated adequate self-advocacy skills in the writing of second and third level appeals on RVRs. He has not received write-ups for any problematic behavior prior to 08.01.15. It is the opinion of this evaluator that Mr. Moore has demonstrated the ability to adapt effectively to new situations and unexpected challenges in remaining drug-free over the last year during his mandatory random drug testing conducted four times a month. Regarding a "sense of responsibility and self-discipline to comply with expectations with a minimum of external monitoring and prompting,"
This cannot be determined with certainty at this time, due to the fact that Mr. Moore has no current obligations on his schedule and is on continued mandatory drug testing.

**3. Capable of continuing necessary medical and mental health treatment without regular monitoring (including taking prescribed medications).**
Mr. Moore has not been diagnosed with a severe mental disorder, and has demonstrated the ability to function and maintain adequate ADLs without the benefit of psychiatric medications since August of 2015. Mr. Moore has participated in MH services at the CCCMS level of care between 11.22.06 and 01.03.07, and since 12.24.13 and not has demonstrated any tendency toward psychological decompensation, with the exception of one admit to the MHCB from 8/25-27/15 - which appears to have been in response to his transfer to PBSP and (then) recent disciplinary write-ups for possession of tobacco and cannabis. Mr. Moore's symptoms complaints resolved quickly, and he was discharged back to ML CCCMS, where he has continued to maintain a level of psychological stability with a low level of mental

Moore,

health monitoring (MH contact every 90 days) and without the benefit of psychiatric medications. His level for risk of self-harm or violence toward others is, based upon review of his records, currently no higher than other level IV inmates. Since Mr. Moore does not suffer from a severe mental disorder, it is not likely that he will experience mental health decompensation, unless he relapses into substance abuse behavior, especially as he will have increased family and social support resources and live in a comparatively safer and less stressful environment. He appears to have learned to adequately cope with stress over the last 18 months without the use of illegal substances – he has not earned further disciplinary write-ups and his UA tests have all been negative since August 2015. His current level of MH treatment is minimal and can be easily continued within the parameters of the Community Re-entry Program resources: Mr. Moore does not require weekly individual therapy sessions. Given his current minimal level of MH services and reasonably anticipating an increase family and social support upon his Release back into the community, Mr. Moore could probably function adequately without any MH services at all, were he to discontinue treatment upon arrival to the MCRP. IN the opinion of this evaluator, Mr. Moore can reasonably be expected to arrange, attend, and follow-through with medical and mental health care as needed in the community environment. There is no evidence to suggest that he will experience in appropriate behavior while in the waiting room and with health care providers. Records indicate a reasonable level of appropriately accessing and utilizing care while in CDCR.

**4. Ability to sit in a group/ classroom setting without exacerbation of symptoms.**
Mr. Moore has not been diagnosed with a severe mental disorder that could be reasonably anticipated to interfere with his ability to tolerate sitting in a group and/or classroom setting. He has completed a GED within CDCR, which has required him to attend classes without being disruptive or acting out in a classroom setting; Mr Moore has no history of disciplinary write-us for such behavior. His successful completion of the GED program in CDCR suggests he has the potential to benefit from being in classroom or group settings, and Mr. Moore indicated he has a positive orientation toward participating in any group or classroom activities associated with the MCRP program. Mr. Moore has no known mental health disorders, which could be reasonably anticipated to interfere with his ability to openly discuss issues, such as substance abuse, trauma, etc.

**5. Ability to appropriately interact socially without supervision / intervention.**
Mr. Moore has a history of violent behavior in the community and in prison. However, his last disciplinary write-up for violent behavior was on 11.27.14 for fighting with another inmate in his housing unit. This would suggest that Mr. Moore has the requisite stability and social skills to live compatibly with others in the open environment of the community re-entry program and, conversely, the ability to refrain from being a disruptive or negative influence on others as they attempt to comply with their program requirements. Mr. Moore reported that he decided to leave behind his participation in violent and disruptive behavior, including involvement in substance abuse, because of his commitment to to return to the community and be a positive influence in the lives of his family members, and this self-report is consistent with the change in behavior he has exhibited over the last 18 months. This would suggest that Mr. Moore is likely to be a positive influence in the MCRP program, who will support and uphold the program's expectations of all residents. This evaluator did not find any information in a review of records or in Mr. Moore's clinical presentation that would suggest he would be at risk for victimization if not monitored closely. This evaluator discussed with Mr. Moore the fact that the MCRP program may require that he attend classes and dorm with GP and SNY inmates, and he indicated that he would not have a problem with this.

**6. Mental illness or cognitive deficits do not play a role in offending and/or rules infractions.**
Mr. Moore has not been diagnosed with a severe mental health disorder, and he is not and has not been

Moore

found to meet the criteria to become a participant in the Clark Developmental Disability Program since his arrival to CDCR. A review of the disciplinary write-ups Mr. Moore has received in the past indicate that, in none of these incidents were mental health or cognitive deficits noted to have played a role in the cited behavior. Based upon the fact that Mr. Moore has not been diagnosed with a severe mental health disorder, is not taking psychiatric medications, has had contact with Mental Health staff every 90 days, and has been free from disciplinary write-ups for the past 18 months, it is not likely that Mr. Moore would experience mental health decompensation or symptom exacerbation were he to discontinue his participation in mental health treatment. Mr. Moore has no history of being diagnosed with any disorder which could be reasonably anticipated to affect his ability to recall information or to lead to a significant reduction in his level of cognitive functioning. His most recent reading scores place him at a 12.9 grade level, and he does not currently require prompting to recall and maintain program rules. He is currently on mandatory UA testing (randomly, a minimum of four times per month), but this is unrelated to his ability to recall program rules.

**7. Ability to obtain and maintain employment.**
Mr. Moore has no significant history of employment prior to his incarceration. According to Mr. Moore, his jobs within CDCR have been largely unskilled Labor: PIA laundry, porter/kitchen/custodian positions, and some yard work. Without vocational training (whether traditional or on-the-job), Mr. Moore will likely only obtain unskilled labor positions in the community. It is reasonable to anticipate that Mr. Moore will require assistance learning how to identify community resources and apply for jobs. The job evaluation this evaluator was able to review was from 2006, which were negative. Quarterly reviews from his role as Vice Chair of AA/NA from 2008 and 2009 were positive. In 2014, Mr. Moore received a certificate of completion for a six-hour Basic Porter Safety Training course. Drawing from his lack of disciplinary write-ups over the last 18 months, his completion of the GED program, his lack of significant mental health issues, and his stated commitment to successfully transition back to his family and community, it is the opinion of this evaluator that, with reasonable support, Mr. Moore has a good chance of finding and maintaining employment in the community when living in the Community Re-entry Program environment. There is no indication that Mr. Moore will experience significant difficulty learning and retaining new information.

R. Johnson, PhD
Psychologist, PBSP

# EXHIBIT B

**EXHIBITS IN SUPPORT OF DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**

**Re: Samaj Moore**

Jimenez, Javier &lt;█████████████████████&gt;
Fri 4/10/2020 12:25 PM

To: Klein, Emily; Public Defender &lt;█████████████&gt;
Cc: Mena, Emilio &lt;█████████████&gt;

Greetings Ms. Klein,

We spoke yesterday in regards to Mr. Moore and you asked me to send you an email detailing some of the things I worked with him on while he was in our program. I met Mr. Moore after he was released from custody back in February of 2018. He was a friend referral of another client who was active in our program. Mr. Moore hit the ground running and was eager to get his life in order. He helped us coordinate a few trips out of the area with some gentlemen from his area in order to get them out of their environment and expose them to different opportunities and conversations.

On top of that, we referred him to several job opportunities and he did we at Tesla before having some serious medical issues with his back which ultimately lead him to be diagnosed permanetly disabled. This was very discouraging for him. However, he continued to stay in touch with me and once he was able to get around, he became active in our program. We helped him with getting to Dr. appointments, sign up for medical insurance, disability benefits and getting to his meetings with his parole officer.

He was very active in our peer groups that met biweekly at our office and he was very open about helping change other areas come together for peace. He actually took on more of a leadership role in our peer groups and showed up every time with different ideas on how to move the work forward. It saddens me to have heard that he was arrested. He will definitely be reconnected to our program upon his release for ongoing support. If you have any questions, please do not hesitate to reach out to me.

Regards,

Thanks,

*Courage to change,*
Javier D. Jimenez, Life Coach
█████████████████████
City of Oakland, Human Services Department - *Oakland Unite*
█████████████████████
Cell: ████████  Office: ████████  Fax: ████████
**Check out the Oakland Unite video!**

Oakland            cid:ima

# EXHIBIT C

**EXHIBITS IN SUPPORT OF DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**

| Call Date | 06-27-2020 11:11 am |
|---|---|
| Clinician Name | Mi You |
| Requested by Patient? | No |
| Subjective | 06-27-2020 11:11 am - You, Mi : pt request to increase Buprenorphine |
| Objective | 06-27-2020 11:11 am - You, Mi : late entry seen pt in HU 6 during pill AM call yesterday pt request to increase Buprenorphine dosage for chronic pain otherwise , pt denies any discomfort , chest pain or SOB |
| Assessment | [blank] |
| Plan | 06-27-2020 11:11 am - You, Mi : consulted with Cooper PA ordered by provider |
| Education | [blank] |
| Recorded By | You, Mi |
| Notes Regarding Note Off | [blank] |

| Call Date | 07-15-2020 9:13 am |
|---|---|
| Clinician Name | Peter Slabaugh |
| Requested by Patient? | No |
| Subjective | 07-15-2020 9:13 am - Slabaugh, Peter : pain in spine. I have seen pt multiple times for chronic thoracic back pain s/P multilevel posterior decompression with EXPECTED mechanical back pain. |
| Objective | 07-15-2020 9:13 am - Slabaugh, Peter : well healed midline thoracic spine surgical incision, no objective acute neuro abnormalty. |
| Assessment | 07-15-2020 9:13 am - Slabaugh, Peter : post thoracic spine surgical decompression with post op pain. |
| Plan | 07-15-2020 9:13 am - Slabaugh, Peter : symptomatic treatment here. needs to be released ASAP to see surgeon that did surgery for further eval and treatment, return ortho here PRN. |
| Education | [blank] |
| Recorded By | Slabaugh, Peter |
| Notes Regarding Note Off | [blank] |

## Dental Sick Calls

(No Records)

## Alerts

(No Records)

## Lab Results